IN THE CIRCUIT COURT OF THE STATE OF OREGON

FOR THE COUNTY OF MULTNOMAH

| | |
|---|---|
| CROWDSTREET, INC., a Delaware corporation, | No. |
| Plaintiff, | **COMPLAINT** |
| v. | Breach of Contract; Intentional Interference with Economic Relationships; Injunctive Relief |
| NITYA CAPITAL, LLC, a Texas limited liability company, | Fee Authority:  ORS 21.135(2)(a) |
| Defendant | (Not Subject to Mandatory Arbitration) |

Plaintiff CrowdStreet, Inc. ("CrowdStreet") alleges the following against Defendant

Nitya Capital, LLC ("Nitya," and with CrowdStreet, the "Parties"):

## **PARTIES, JURISDICTION, AND VENUE**

1.

CrowdStreet is a Delaware corporation with its principal place of business in

Portland, Oregon.

2.

Nitya is a Texas limited liability company with its principal place of business in

Houston, Texas.

3.

CrowdStreet and Nitya are parties to a Marketplace Services Agreement dated May

23, 2018 (the "Agreement").  A correct copy of Agreement is attached as Exhibit 1.

Page 1   -   COMPLAINT

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503-224-3380    Fax 503-220-2480

1          4.

2          Jurisdiction and venue are appropriate in this Court.  Conduct giving rise to

3  CrowdStreet's claims occurred in Multnomah County, and the proceeding arises out of a

4  promise by Nitya to pay for services actually performed by CrowdStreet in Multnomah

5  County.

6                              **FACTUAL ALLEGATIONS**

7          5.

8          CrowdStreet is a real estate investing platform that gives investors direct access to

9  individual commercial real estate investment opportunities, allowing investors to review,

10  compare, and personally choose the deals that meet their own investment criteria through its

11  proprietary online CrowdStreet Marketplace Solution (the "Marketplace").  CrowdStreet

12  provides real estate companies seeking to raise capital for their real estate projects the

13  opportunity, through Marketplace Services Agreements, to market their projects to active or

14  prospective investors who have contracted with CrowdStreet for access to the Marketplace

15  ("Users").  The value that CrowdStreet offers these real estate companies ("Sponsors") is its

16  extensive number of Users.  In turn, the value that CrowdStreet provides Users is a great

17  number of different investment options, from diversified real estate funds to tailored

18  portfolios and direct investment opportunities.

19          6.

20          Nitya is a privately held real estate investment firm that owns and manages real estate

21  assets across the United States, including multifamily, new development, and commercial

22  office and retail assets.

23          7.

24          On or around May 23, 2018, Nitya entered into the Agreement with CrowdStreet.

25  The Agreement allows Nitya to utilize the Marketplace to promote its projects to

26

Page 2   -   COMPLAINT

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503-224-3380    Fax 503-2202480

1  CrowdStreet's Users.  The value that CrowdStreet provided Nitya through the Agreement is

2  access to the Marketplace and its Users, *i.e.*, potential investors in Nitya's projects.

3                                              8.

4         In order to preserve the strength of CrowdStreet's relationships with its Users and the

5  trust those Users have in CrowdStreet, the Agreement provides limitations on the

6  communications Nitya may send to CrowdStreet Users.  Specifically, pursuant to Section 6

7  of the Agreement, Nitya agreed "not to circumvent or attempt to circumvent CrowdStreet or

8  the CrowdStreet Marketplace Solution in relation to Users and Project(s)" and "not [to]

9  market any future offerings directly to Users without the written approval or involvement of

10 CrowdStreet[.]"  Section 6 provides in full:

11          All information obtained through the CrowdStreet Marketplace
            Solution is confidential. You may not disclose such confidential
12          information or use such confidential information for any purpose
            other than for the purpose of interacting with a potential investor
13          through the CrowdStreet Marketplace Solution. You agree not to
            circumvent or attempt to circumvent CrowdStreet or the
14          CrowdStreet Marketplace Solution in relation to Users and
            Project(s). **You explicitly agree that you shall not market any**
15          **future offerings directly to Users without the written approval**
            **or involvement of CrowdStreet by emailing a request to**
16          **ir@crowdstreet.com. Any agreement to the contrary shall be**
            **agreed to in each Proposal including fees and communication**
17          **processes. You agree that money damages would not be a**
            **sufficient remedy for any breach of this Agreement and that**
18          **CrowdStreet will be entitled to specific performance and**
            **injunctive or other equitable relief as a remedy for any such**
19          **breach, and you further agree to waive any requirement for**
            **the securing or posting of any bond in connection with such**
20          **remedy. Such remedy will not be deemed to be the exclusive**
            **remedy for breach of this Agreement, but will be in addition to**
21          **all other remedies available at law or equity.**

22 (Ex. 1 § 6) (the "Confidentiality and Non-Circumvention Provision") (emphasis in original).

23                                             9.

24         In 2019, CrowdStreet began receiving complaints from Users stating that Nitya was

25 sending them unwanted promotional emails to review and invest in their deals outside of the

26 Marketplace.

Page 3   -   COMPLAINT

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503-224-3380    Fax 503-2202480

10.

Over numerous emails and telephone calls, CrowdStreet explained to Nitya's President, Vivek Shah, and its Investor Relations Manager, Joanne Choi, that the Confidentiality and Non-Circumvention Provision prohibited Nitya from engaging in these direct communications with Users, and demanded that Nitya cease these activities. CrowdStreet has further demanded that, except for the 36 Users who opted in to Nitya's communications, Nitya scrub the email addresses of CrowdStreet Users from its marketing data. On or around January 13, 2020, Nitya informed CrowdStreet that it would do so.

11.

On or around February 18, 2020, Nitya sent yet another email to CrowdStreet Users marketing yet another non-Marketplace investment opportunity. CrowdStreet again demanded that Nitya cease these activities and scrub the Users' information from its systems. Although Nitya again agreed to so, CrowdStreet identified yet another email from Nitya to CrowdStreet's Users marketing another non-Marketplace investment opportunity later that same day.

12.

On February 21, 2020, CrowdStreet sent a letter to Nitya demanding that it immediately cease and desist any and all further communications with CrowdStreet's Users marketing non-Marketplace investment opportunities—including the open investment opportunity circulated on February 18—except for the 36 Users that opted in to Nitya's communications. On February 24, 2020, Nitya confirmed that it would remove all Users from its distribution list other than (a) Users that had invested with Nitya prior to the execution of the Agreement and (b) Users that had expressly opted in to Nitya's communications. Based on these representations, CrowdStreet understood that Nitya had ceased marketing non-Marketplace investment opportunities to CrowdStreet Users other than those identified above.

Page 4  -  COMPLAINT

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503-224-3380    Fax 503-2202480

1    13.

2    On or about June 12, 2020, however, CrowdStreet discovered that Nitya had once

3 again begun marketing unapproved investments to CrowdStreet's Users when CrowdStreet's

4 CEO received an unapproved solicitation from Nitya outside of the Marketplace.  On

5 information and belief, Nitya marketed to Users a non-Marketplace investment opportunity

6 that closed in August 2020.

7    14.

8    On information and belief, on or around October 30, 2020, Nitya launched a

9 crowdfunding platform that will mimic the Marketplace in key ways.

10    15.

11    Because CrowdStreet's prior efforts have failed to stop Nitya's actions, CrowdStreet

12 determined it necessary to file this action seeking interim relief to protect its relationship with

13 its Users and the value of the Marketplace platform.

14    **FIRST CLAIM FOR RELIEF**

15    **(Breach of Contract—Injunctive Relief)**

16    16.

17    CrowdStreet realleges and incorporates herein the allegations in paragraphs 1-15,

18 above.

19    17.

20    The Agreement is a valid and enforceable contract between CrowdStreet and Nitya.

21    18.

22    CrowdStreet performed its obligations under the Agreement.

23    19.

24    The Confidentiality and Non-Circumvention Provision prohibits Nitya from

25 circumventing "CrowdStreet or the CrowdStreet Marketplace Solution in relation to Users

26 and Project(s)" and from "marketing any future offerings directly to Users without the

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503-224-3380    Fax 503-2202480

Page 5    -    COMPLAINT

1 written approval or involvement of CrowdStreet." It further prohibits Nitya from

2 "disclos[ing]" or "us[ing]" information obtained from the Marketplace "for any purpose

3 other than for the purpose of interacting with a potential investor *through the CrowdStreet*

4 *Marketplace Solution.*" (Emphasis added.) Nitya repeatedly breached this provision when it

5 marketed to Users outside of the Marketplace and without CrowdStreet's approval.

6                                         20.

7         Nitya breached the Confidentiality and Non-Circumvention Provision despite

8 receiving notice on numerous occasions from CrowdStreet that Nitya's actions violated the

9 Agreement. Because of Nitya's past actions, CrowdStreet believes that Nitya will again

10 solicit Users outside the Marketplace and without CrowdStreet's approval unless enjoined

11 from doing so.

12                                         21.

13         CrowdStreet has suffered and continues to suffer damages as a direct and proximate

14 result of Nitya's breach of contract.

15                                         22.

16         Nitya's continued solicitation of Users outside the Marketplace without

17 CrowdStreet's approval will cause CrowdStreet irreparable harm by damaging its

18 relationship with Users and, by extension, its business reputation, which is CrowdStreet's

19 most valuable asset. Because of the importance of maintaining control over access to its

20 Users, the Agreement expressly provides (and Nitya agreed) "that money damages would not

21 be a sufficient remedy for any breach of this Agreement and that CrowdStreet will be entitled

22 to specific performance and injunctive or other equitable relief as a remedy for any such

23 breach." (Ex. 1 § 6.)

24                                         23.

25         For these reasons, CrowdStreet is entitled to an injunction to prevent further breach of

26 the Agreement by Nitya and, in order to prevent further harm during the course of this action,

**STOEL RIVES LLP**
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
*Main 503-224-3380    Fax 503-2202480*

Page 6   -   COMPLAINT

1  is entitled to a preliminary injunction against Nitya to ensure it does not continue to violate

2  the terms of the Agreement. Further, no bond should be required because Nitya agreed "to

3  waive any requirement for the securing or posting of any bond in connection with such

4  remedy." (*Id.*)

5  **SECOND CLAIM FOR RELIEF**

6  **(Intentional Interference with Economic Relationships—Injunctive Relief)**

7  24.

8  CrowdStreet realleges and incorporates herein the allegations in paragraphs 1-23,

9  above.

10  25.

11  CrowdStreet has a contractual, business relationship with each of its Users.

12  26.

13  Nitya intentionally interfered with CrowdStreet's relationship with at least 226 Users

14  through improper means—*i.e.,* by contacting them outside of the Marketplace without their

15  consent or the consent of CrowdStreet—and for an improper purpose—*i.e.,* to circumvent

16  CrowdStreet as an intermediary.

17  27.

18  Nitya's intentional interference has caused harm to CrowdStreet's relationships with

19  these Users, and CrowdStreet has suffered and continues to suffer damages as a direct and

20  proximate result.

21  28.

22  Nitya's continued solicitation of Users outside the Marketplace without

23  CrowdStreet's approval will cause CrowdStreet irreparable harm by further damaging its

24  relationship with these Users and, by extension, CrowdStreet's business reputation, which is

25  CrowdStreet's most valuable asset.

26

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR 97205
Main 503-224-3380    Fax 503-2202480

Page 7  -  COMPLAINT

EXHIBIT 1
Page 7 of 26

1              29.

2        For these reasons, CrowdStreet is entitled to an injunction to prevent Nitya from

3    further interfering and harming CrowdStreet's relationships with Users.

4                              **PRAYER FOR RELIEF**

5        WHEREFORE, CrowdStreet respectfully prays that this Court enter judgment as

6    follows:

7        1.    Preliminarily and permanently restraining and enjoining Nitya from soliciting

8    Users outside the Marketplace and without CrowdStreet's approval;

9        2.    Awarding CrowdStreet its costs and disbursements; and

10       3.    Granting CrowdStreet all such other and further relief as the Court deems just

11   and equitable under the circumstances.

12       DATED:  November 17, 2020.

                                        STOEL RIVES LLP

13

14

                                        /s/ Samantha K. Sondag
15                                      AMY EDWARDS, OSB No. 012492
                                        amy.edwards@stoel.com
16                                      SAMANTHA K. SONDAG, OSB No. 154244
                                        samantha.sondag@stoel.com
17                                      Stoel Rives LLP
                                        760 SW Ninth Avenue, Suite 3000
18                                      Portland, OR  97205
                                        Telephone:  503.224.3380
19
                                        Attorneys for Plaintiff
20
                                        Trial Attorney: Amy Edwards
21

22

23

24

25

26

Page 8   -   COMPLAINT

EXHIBIT 1
Page 8 of 26

STOEL RIVES LLP
760 SW Ninth Avenue, Suite 3000, Portland, OR  97205
Main 503-224-3380    Fax 503-2202480

 **CROWDSTREET**
CONNECT

## MARKETPLACE SERVICES AGREEMENT

This Marketplace Services Agreement, dated as of May **23**, 2018 (the "Effective Date"), is by and between CrowdStreet, Inc. ("CrowdStreet") and the sponsor indicated on the signature page to this Agreement ("you" or the "Sponsor").

Capitalized terms used but not immediately defined in this Agreement are used with the meanings given in Appendix A.

Section 1.    SERVICES

1.1    Designation; Exclusivity

Subject to the terms and conditions of this Agreement, CrowdStreet hereby grants you the right to list Projects (each, a "Project or Offering") through the CrowdStreet Marketplace Solution, subject to CrowdStreet's acceptance, in its sole discretion, of each Project. CrowdStreet agrees that each Project it accepts will be described in and subject to the additional terms set forth in a separate Marketplace Solution Proposal(s) (each, a "Proposal"), which in each case must be accepted by the parties. Each Project shall continue for the period set forth in a Proposal, which period may be extended with CrowdStreet's consent and payment of any applicable fees, or earlier terminated as provided in Sections 2.2 and 2.4 below. You agree that each Project listed through the use of the CrowdStreet Marketplace Solution will be an exclusive posting to CrowdStreet and will not be marketed or advertised on any other online third-party intermediary funding platform. Nothing herein shall require Sponsor to list Projects through CrowdStreet Marketplace Solution other than after the acceptance of a Proposal of such Project.

1.2    Terms of Service

The Services are offered to you, subject to your acceptance without modification, of all of the terms and conditions contained in this Agreement and all other operating rules and policies governing use of the CrowdStreet Marketplace Solutions ("Marketplace Solutions"), including the Website generally (including without limitation the Terms of Services and Privacy Policy posted on the Website) and any future modifications or additional terms that may be published from time to time on the Website or otherwise provided to you in writing to which you agree. You agree that your continued use of the Marketplace Solutions and Website after publication or notice of changed or additional terms constitutes acceptance of such amendment. Should you choose to use the CrowdStreet Online Funding solution as part of your use of Marketplace Solutions you will be required to review and agree to a click wrap agreement with separate terms and conditions from this Agreement. You acknowledge and agree that CrowdStreet is not a registered broker-dealer, investment advisor or funding portal and shall not perform any activities of a broker-dealer or investment adviser, including but not limited to, soliciting investors, providing investment advice or recommending the purchase of the Securities.

EXHIBIT 1
Page 9 of 26



CROWDSTREET
CONNECT

Section 2.     USE OF CROWDSTREET MARKETPLACE SOLUTIONS

2.1     Registration and Account Management

In order to access the Marketplace Solutions you must create an account and become a registered user. You agree that any information you provide CrowdStreet on registration for an account and at all other times will be true, current, and complete. You further agree that you will ensure that all information is kept accurate and up-to-date at all times your account remains open and active. You are responsible for maintaining the confidentiality of your user name and password and for any and all activities and postings that are made using your account. You agree to notify CrowdStreet immediately if you suspect that an unauthorized person has accessed your account.

2.2     Posting and Removal of Information

CrowdStreet is under no obligation to and will not verify the information you provide for inclusion in the Marketplace Solutions, including through the Website. Subject to your consent, CrowdStreet may format the information provided about a particular Project to conform the look and feel of a Project posting to other projects posted on the Website. You are responsible for any information or materials CrowdStreet prepares, edits, modifies, or formats on your behalf, provided that you are given an opportunity to review and approve such materials and information. Any materials or information provided to you in writing by CrowdStreet will be deemed accepted within three business days, unless you notify CrowdStreet in writing of non-acceptance. CrowdStreet may remove any information or portions thereof in the event the information violates this Agreement or if CrowdStreet has any reason to believe that the information or any portion thereof may violate a third party's intellectual property or other rights, is defamatory, is materially inaccurate, or may otherwise expose CrowdStreet to liability without notice and without liability for such removal. Any information forwarded to prospective investors or made available on the Website will be in compliance with Federal and states securities laws and acceptable to both CrowdStreet and its counsel, if any. The Sponsor agrees that it shall be required to engage a third-party escrow agent or banker for the Project and will agree with such escrow agent that, in the event the Project is terminated by CrowdStreet and/or Sponsor, all funds held in escrow shall be promptly returned to investors.

2.3     Compliance with Laws

You agree to use the Marketplace Solutions only for purposes that are legal, proper and in accordance with all applicable law, rules, and regulations, including, without limitation, the Securities Act of 1933, the Securities Exchange Act of 1934, any applicable state "blue sky" laws, any other applicable United States federal or state laws, rules, or regulations, and any applicable foreign laws.

EXHIBIT 1
Page 10 of 26



2.4    Suspension and Termination of Services

CrowdStreet may deny, suspend, or terminate your account and access to the Marketplace Solutions for any reason and without notice, including, without limitation, if CrowdStreet believes that you are in breach of a term of this Agreement, are using the Marketplace Solutions in an unauthorized or fraudulent manner or in any way that may expose CrowdStreet, its sponsors, or other users to liability or damage to business or reputation.

Section 3.    FEES

3.1    Fees; Adjustment

You agree to pay CrowdStreet for the Services purchased on or through your account at rates set forth in each Proposal, or otherwise as mutually agreed in writing from time to time.

3.2    Payment

Fees will be billed as provided at the time you purchase any Services and must be paid as set forth in each Proposal.  CrowdStreet will bill you all applicable charges through the payment method specified in your account.  For credit or debit card payments, CrowdStreet may seek pre-authorization of your card account prior to your purchase to verify that the card is valid and has the necessary credit or funds available.

Section 4.    ADDITIONAL TERMS APPLICABLE TO YOUR USE OF CROWDSTREET MARKETPLACE SOLUTIONS

4.1    Your Responsibilities as Sponsor

You represent, warrant and agree as of the date of this Agreement, and as of the date of each closing of a transaction listed on the CrowdStreet Marketplace Solution (each such date, a "Closing Date"), to each of the provisions as set forth on Appendix B as it may be amended in writing from time to time.

4.2    CrowdStreet's Responsibilities as Provider of the Marketplace Solutions

CrowdStreet represents, warrants, and agrees as of the date of this Agreement, and as of each Closing Date, to each of the provisions as set forth on Appendix C as it may be amended in writing from time to time.

4.3    Covenants and Conditions Applicable to Each Closing

You and CrowdStreet agree to use respective best efforts to comply with covenants and satisfy conditions at or prior to Closing as set forth on Appendix D as it may be

EXHIBIT 1
Page 11 of 26



amended in writing from time to time.

Section 5.    OWNERSHIP OF MARKETPLACE SOLUTIONS AND DATA

5.1    CrowdStreet Materials

(a)    Ownership. CrowdStreet, its affiliates, and its licensors own all right, title and interest in the CrowdStreet Materials, whether registered or unregistered. The CrowdStreet Materials are protected by copyright, trademark, patent, trade secret, and other intellectual property laws and proprietary rights. You agree to comply with all applicable laws by not copying or using proprietary content, except as allowed by this Agreement or by written consent of the owner of the proprietary rights.

(b)    License. CrowdStreet hereby grants you a non-exclusive, revocable, non-transferrable license to download and print the CrowdStreet Materials for your personal, non-commercial use only, provided that you retain all copyright and proprietary notices that are contained in such portion of the CrowdStreet Materials. You may not modify, distribute, share, disclose, transmit, display, reproduce, publish, license, create derivative works from, transfer, or otherwise use the CrowdStreet Materials in any other way, except with the prior written permission of CrowdStreet. Your access to or use of the Website does not grant or transfer to you ownership interest or any rights in the CrowdStreet Materials other than those rights expressly granted in this Agreement or the Terms of Use.

5.2    Your Materials

It is expected that you, as a Sponsor, will submit, post, transmit and share certain Sponsor Materials. You are solely responsible for all Sponsor Materials that you, directly or indirectly, post, transmit, or share on or through the Marketplace Solutions and Website, as well as for any actions taken by CrowdStreet or Users as a result of your Sponsor Materials.

You retain all right, title, and interest in your Sponsor Materials, By posting, transmitting, or sharing your Sponsor Materials on or through the Website, you hereby (a) grant to CrowdStreet and its affiliates, sub-licensees, partners, designees, and assignees, a worldwide, non-exclusive, fully paid-up, royalty-free, perpetual, irrevocable, sub-licensable, and transferable license to use, reproduce, distribute, modify, adapt, prepare derivative works of, publicly display, publicly perform, and otherwise display your Sponsor Materials and derivatives thereof for the purposes for which it is provided and in any media form, and (b) grant to users of the Website a non-exclusive license to access or otherwise use your Sponsor Materials to assess whether to invest in a Project You hereby affirm, represent, and warrant that: (i) you either own the Sponsor Materials or have the necessary rights and permissions to grant the rights and license set forth herein, and (ii) the Sponsor Materials and any use of the Sponsor Materials pursuant to this Agreement, does not and will not:  (A) infringe, violate, or misappropriate any third-party right, including any intellectual property or proprietary right; (B) violate any applicable laws, rules, or regulations (including, without limitation, United States federal and state securities laws); or (C) require CrowdStreet to obtain a license or permission from or pay fees to any third party.

EXHIBIT 1
Page 12 of 26



### 5.3    User Content

You agree and understand that you may be exposed to User Content posted by others that is inaccurate, inappropriate, misleading, unlawful, offensive or otherwise objectionable, and that CrowdStreet makes no representations or warranties regarding User Content and is not responsible for the accuracy, usefulness, or intellectual property rights of or relating to User Content. You agree to waive, and hereby do waive, any legal or equitable rights or remedies you have or may have against CrowdStreet with respect to User Content posted by users.

CrowdStreet has no obligation to monitor, review, control, or guarantee the accuracy or confidentiality of User Content. However, CrowdStreet reserves the right at all times (but will not have an obligation) to remove or edit any User Content in its sole discretion, with or without notice. Without limiting the generality of the preceding sentence, CrowdStreet complies with the Digital Millennium Copyright Act, and will remove User Content from the Website upon receipt of a compliant takedown notice. CrowdStreet will promptly respond to your request for removal of false, misleading, defamatory or similar user content.

### Section 6.    CONFIDENTIALITY AND NON-CIRCUMVENTION

All information obtained through the CrowdStreet Marketplace Solution is confidential. You may not disclose such confidential information or use such confidential information for any purpose other than for the purpose of interacting with a potential investor through the CrowdStreet Marketplace Solution. You agree not to circumvent or attempt to circumvent CrowdStreet or the CrowdStreet Marketplace Solution in relation to Users and Project(s). **You explicitly agree that you shall not market any future offerings directly to Users without the written approval or involvement of CrowdStreet by emailing a request to ir@crowdstreet.com. Any agreement to the contrary shall be agreed to in each Proposal including fees and communication processes. You agree that money damages would not be a sufficient remedy for any breach of this Agreement and that CrowdStreet will be entitled to specific performance and injunctive or other equitable relief as a remedy for any such breach, and you further agree to waive any requirement for the securing or posting of any bond in connection with such remedy. Such remedy will not be deemed to be the exclusive remedy for breach of this Agreement, but will be in addition to all other remedies available at law or equity.**

This Section 6 does not apply to information which (i) is or becomes generally available to the public other than as a result of a disclosure by you or your representatives, (ii) is or was developed independently by you (such as your Sponsor Materials), (iii) becomes available to you on a non-confidential basis from a third party, provided that the third party was not bound by an obligation of confidentiality to CrowdStreet, or (iv) is required to be disclosed by law, provided that you promptly notify CrowdStreet in order to provide CrowdStreet an opportunity to seek a protective order or other relief with respect to such impending disclosure. This Section 6 shall not apply to (i) users who have previously invested in a Project through the CrowdStreet Marketplace Solution who approaches Sponsor or its affiliates regarding investment in a Project, provide that Sponsor notifies CrowdStreet of such approach (ii) any current investor in Nitya sponsored investments or their affiliates or (iii) any institutional investor.

EXHIBIT 1
Page 13 of 26



Section 7.    TERMINATION

    7.1    Termination by CrowdStreet

        Subject to any continued posting requirements under Section 1.1 or an accepted Proposal (which will itself terminate in the event of a material breach of this Agreement by you), you agree that CrowdStreet, in its sole discretion and for any or no reason, may terminate this Agreement, your account, and your right to use the Website at any time without liability.

    7.2    Termination by You

        You may terminate this Agreement and your account at any time and for any reason or no reason, by contacting CrowdStreet customer service at info@crowdstreet.com or by deleting your account and discontinuing your use of the Services.  If you terminate this Agreement or your account, you will remain obligated to pay all charges, if any, relating to your use of the Marketplace Solutions or Services provided by CrowdStreet prior to termination, together with any unpaid annual maintenance or subscription fees for the remaining term of any agreed subscription period.  Notwithstanding any termination of this Agreement by you, the representations, warranties and agreements you have made will survive any termination of this Agreement for an indefinite period or expiration by their express terms.

    7.3    Effect of Termination

        Upon any termination or expiration of this Agreement, whether by you or CrowdStreet, CrowdStreet may remove and destroy all or any part of the information uploaded by you.  CrowdStreet will have no obligation to maintain any such information in its databases or to forward any such information to you or any third party.

EXHIBIT 1
Page 14 of 26



Section 8.    NO WARRANTIES

THE SERVICES, THE CROWDSTREET MARKETPLACE SOLUTIONS, THE WEBSITE, THE CROWDSTREET MATERIALS, THE USER CONTENT, AND ANY OTHER INFORMATION OR MATERIALS MADE AVAILABLE IN CONJUNCTION WITH OR THROUGH THE MARKETPLACE SOLUTIONS,WEBSITE, THE SERVICES, OR UNDER THIS AGREEMENT ARE PROVIDED "AS IS," "AS AVAILABLE" AND "WHEN AVAILABLE" WITHOUT WARRANTIES OF ANY KIND.  TO THE FULLEST EXTENT PERMISSIBLE BY LAW, CROWDSTREET DISCLAIMS ALL WARRANTIES, WHETHER STATUTORY, EXPRESS OR IMPLIED, INCLUDING, BUT NOT LIMITED TO, EXPRESS AND IMPLIED WARRANTIES OF MERCHANTABILITY, FITNESS FOR A PARTICULAR PURPOSE, NON-INFRINGEMENT, COMPLIANCE WITH LAWS, CORRECTNESS, ACCURACY, AND RELIABILITY.  WITHOUT LIMITING THE FOREGOING, CROWDSTREET MAKES NO REPRESENTATION OR WARRANTY THAT USE OF THE SERVICES AND WEBSITE WILL BE UNINTERRUPTED, ERROR-FREE, FREE OF VIRUSES OR OTHER HARMFUL COMPONENTS OR COMPLIANCE WITH SECURITIES REGULATIONS. YOU ARE SOLELY RESPONSIBLE FOR ENSURING COMPLIANCE WITH STATE AND FEDERAL REGULATIONS.

CROWDSTREET DOES NOT GIVE BUSINESS ADVICE, INVESTMENT ADVICE, TAX ADVICE OR LEGAL ADVICE TO ANYONE USING THE WEBSITE. CROWDSTREET DOES NOT CLAIM TO BE AND IS NOT A BROKER, DEALER, FUNDING PORTAL OR INVESTMENT ADVISOR AND NOTHING HEREIN WILL CONSTITUTE A SALE OR OFFER TO BUY OR SELL OR RECOMMEND ANY SECURITIES BY CROWDSTREET.  CROWDSTREET DOES NOT MAKE INVESTMENTS. CROWDSTREET'S SOLE ROLE IS TO PROVIDE THE SERVICES AND ACCESS TO THE WEBSITE, WHICH IS A TECHNOLOGY PACKAGE THAT ENABLES INVESTORS AND SPONSORS TO SHARE A COMMUNITY OF IDEAS, INVESTMENT OPPORTUNITIES, AND ONGOING COMMUNICATIONS.  CROWDSTREET HAS NOT INVESTIGATED WHETHER ANY USER IS AN ACCREDITED INVESTOR BEYOND REVIEWING INFORMATION SUBMITTED DIRECTLY TO CROWDSTREET.  CROWDSTREET IS NOT RESPONSIBLE FOR AND WILL HAVE NO LIABILITY WITH RESPECT TO THE ACTIONS, STATEMENTS, REPRESENTATIONS, OR OMISSIONS OF ANYONE USING THE WEBSITE.

CROWDSTREET DOES NOT AGREE TO ANY OBLIGATIONS OF CONFIDENTIALITY, NONDISCLOSURE OR NONUSE, EXCEPT AS EXPLICITLY PROVIDED FOR IN CROWDSTREET'S PRIVACY POLICY OR OTHERWISE ON THE WEBSITE.

SPONSOR   FURTHER   UNDERSTANDS   AND   AGREES   THAT CROWDSTREET   DOES   NOT   PURPORT   TO   MAKE   ANY   REPRESENTATION,

EXHIBIT 1
Page 15 of 26



WARRANTY, OR GUARANTEE THAT ANY ACTIVITY BY SPONSOR (OR ITS AFFILIATES) OR CROWDSTREET, WHETHER THROUGH THE WEBSITE OR NOT, IS IN COMPLIANCE WITH APPLICABLE STATE OR FEDERAL SECURITIES LAWS. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, SPONSOR IS REQUIRED

TO ENSURE THAT ALL ACTIVITY IT TAKES PART IN PERTAINING TO THE SECURITIES OFFERINGS ON CROWDSTREET IS IN COMPLIANCE WITH APPLICABLE STATE AND FEDERAL SECURITIES LAWS AS THE SPONSOR SHALL BE SOLELY RESPONSIBLE FOR COMPLYING WITH ALL LAWS. SPONSOR SHALL AT ALL TIMES COMPLY WITH REGULATION D OF THE SECURITIES ACT OF 1933, AS AMENDED, AND SHALL NOT HAVE ANY DISQUALIFYING EVENT UNDER RULE 506(D). SPONSOR AGREES THAT IT, AND NOT CROWDSTREET, SHALL HAVE THE SOLE OBLIGATION OF VERIFYING THAT EACH INVESTOR IS ACCREDITED IN ACCORDANCE WITH RULE 506(C) AND ITS ADOPTING RULES AND REGULATIONS.

Section 9.    INDEMNIFICATION

To the fullest extent permissible by applicable law, You agree to defend, indemnify, and hold CrowdStreet and its directors, officers, employees, attorneys, accountants, and agents ("Representatives") harmless from any claim, demand, loss, damage, liability, or expense, including reasonable attorney fees and costs, however incurred, including those incurred at trial, in any bankruptcy proceeding, on appeal, and on any petition for review (collectively, "Damages") to the extent that Damages result directly or indirectly from your use of the Website or any Project that you list through the CrowdStreet Marketplace Solution. The Sponsor shall assume the defense of such action, including the employment and fees of counsel (reasonably satisfactory to CrowdStreet) and payment of accountable expenses.

Section 10.    LIMITATION OF LIABILITY

CROWDSTREET'S LIABILITY TO YOU UNDER THIS AGREEMENT OR OTHERWISE WILL BE LIMITED TO AMOUNTS PAID BY YOU IN CONNECTION WITH A PARTICULAR PROPOSAL. UNDER NO CIRCUMSTANCES, INCLUDING, BUT NOT LIMITED TO, NEGLIGENCE, WILL CROWDSTREET OR ITS REPRESENTATIVES BE LIABLE FOR ANY SPECIAL, INDIRECT, INCIDENTAL, CONSEQUENTIAL, PUNITIVE, OR EXEMPLARY DAMAGES ARISING FROM OR RELATED TO THE USE OF THE WEBSITE OR THE SERVICES OR THIS AGREEMENT, EVEN IF CROWDSTREET HAS BEEN ADVISED OF THE POSSIBILITY OF SUCH DAMAGES.

YOU ACKNOWLEDGE AND AGREE THAT CROWDSTREET HAS OFFERED ITS SERVICES, SET ITS PRICES, AND ENTERED INTO THIS AGREEMENT IN RELIANCE UPON THE WARRANTY DISCLAIMERS AND LIMITATIONS OF LIABILITY SET FORTH IN THIS AGREEMENT, THAT THE WARRANTY DISCLAIMERS AND THE LIMITATIONS OF LIABILITY SET FORTH IN THIS AGREEMENT REFLECT A REASONABLE AND FAIR ALLOCATION OF RESPONSIBILITY BETWEEN YOU AND CROWDSTREET, AND THAT THE WARRANTY DISCLAIMERS AND THE LIMITATIONS OF LIABILITY SET FORTH IN THIS AGREEMENT FORM AN

EXHIBIT 1
Page 16 of 26

 **CROWDSTREET** CONNECT

ESSENTIAL BASIS OF THE BARGAIN BETWEEN YOU AND CROWDSTREET. CROWDSTREET WOULD NOT BE ABLE TO PROVIDE THE SERVICES TO YOU ON AN ECONOMICALLY REASONABLE BASIS WITHOUT THESE LIMITATIONS.

IF YOU ARE A CALIFORNIA RESIDENT, YOU WAIVE CALIFORNIA CIVIL CODE SECTION 1542, WHICH SAYS: "A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OR HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR."

Section 11.    MISCELLANEOUS

11.1    Arbitration

Any claim arising out of or related to this Agreement or the access and use of the Marketplace Solutions and Website will be resolved exclusively by arbitration, which, unless the parties agree otherwise in writing, will be administered by and in accordance with the rules of the American Arbitration Association.  The place of arbitration will be Multnomah County, Oregon.  The award rendered by the arbitrator will be final and binding, and judgment may be entered on the award in any court having jurisdiction.  The parties may endeavor to resolve disputes by mediation at any time as they may agree, provided, however, that resolution of disputes by mediation is not required prior to initiating resolution of disputes by arbitration. Notwithstanding anything to the contrary in this paragraph, CrowdStreet may seek injunctive relief in any court having jurisdiction, and this agreement to arbitrate certain disputes will not apply in the event parties that are integral to the resolution of a dispute are not also subject to an agreement to arbitrate and a court proceeding is otherwise pending or threatened.

11.2    Entire Agreement

This Agreement (including the documents and instruments referred to in this Agreement) constitutes the entire agreement and understanding of the parties with respect to the subject matter and supersedes all prior understandings and agreements, whether written or oral, among the parties with respect to such subject matter.

11.3    Force Majeure

Neither party will be responsible for failure to perform any obligation under this Agreement due to causes beyond the reasonable control of such party, including but not limited to strikes, lockouts, riots, epidemics, war, government regulation, fire, flood, natural disasters, Acts of God, or inadequacies of equipment, or other cause beyond the reasonable control of such party.

EXHIBIT 1
Page 17 of 26



### 11.4   Governing Law

This Agreement will be governed by and construed and enforced in accordance with the laws of the state of Oregon, without regard to conflicts of laws provisions.

### 11.5   Severability

If any provision of this Agreement is found unenforceable, that provision will be deemed to be modified to the extent necessary to make it enforceable, while preserving its intent. If any provision of this Agreement is nonetheless held unenforceable in any jurisdiction, the provision will be severed from this Agreement as to that jurisdiction, and the enforceability of this Agreement in any other jurisdiction and of the remaining provisions in that jurisdiction will not be affected.

The parties have executed this Agreement as of the Effective Date.

| SPONSOR: NITYA CAPITAL, LLC | CROWDSTREET, INC. |
|---|---|
| By: | By: _Darren Powderly_ |
| Name: _Swapnil Agarwal_ | Name: Darren Powderly |
| Title: _President_ | Title: Co-Founder, VP of Sales |
| Date: _May 23, 2018_ | Date: May 21, 2018 |

EXHIBIT 1
Page 18 of 26

 **CROWDSTREET**
CONNECT

APPENDIX A

**DEFINED TERMS**

As used in this Agreement:

1.      "Agreement" means this Marketplace Services Agreement.

2.      "Closing Date" is used with the meaning given in Section 4.1.

3.      "CrowdStreet" means CrowdStreet, Inc., a Delaware corporation.

4.      "CrowdStreet Marketplace Solution" means the CrowdStreet technology and product offerings including, but not limited to, Posting Platform, Transaction Center, Investor Room, and Management Portal and the portion of the Website which makes available real estate investment opportunities to "accredited investors" (as used in the United States federal securities laws and regulations).

5.      "CrowdStreet Materials" means (a) the Website, including, without limitation, the visual interfaces, graphics, design, systems, methods, information, computer code, software, services, "look and feel," organization, compilation of the content, code, and data, and (b) all content on the Website, including, without limitation, all articles, documents, brochures, presentations, pictures, images, audiovisual works, other informational materials and any user comments.  CrowdStreet Materials do not include User Content or Sponsor Materials

6.      "Damages" is used with the meaning given in Section 9

7.      "Sponsor" means your role as sponsor of and provider of information related to a real estate investment posted through the CrowdStreet Marketplace Solutions.

8.      "Posting Issuer" means any special purpose vehicle owned or controlled by Sponsor established for a particular Project.

9.      "Project" means the real estate transaction for which you seek funding through the CrowdStreet Marketplace Solution.

10.      "Proposal" is used with the meaning given in Section 3.1

11.      "Securities" means any equity or debt securities or similar instruments you offer or sell through the CrowdStreet Marketplace Solution.

12.      "Services" means any services provided to you by CrowdStreet under this Agreement (including under any particular Proposal), which may include posting of a Project, formatting Project postings to conform to the standard look and feel of other projects posted on the Website, post-closing shareholder or other owner relationship management, and transaction document management.

**EXHIBIT 1**
**Page 19 of 26**



13.    "Sponsor Materials" means all materials and information you provide related posted and made available through the CrowdStreet Marketplace Solution.

14.    "User Content" means content post on the Website by users of the Website other than you or CrowdStreet, which may include, without limitation, personal and representative profiles and information sheets, comments, streaming feeds, articles, documents, brochures, presentations, pictures, images, audiovisual works, other informational materials and any user comments or other unedited or third party content.

15.    "Users" means active or prospective investors who have access to the Website.

16.    "Website" means the website located at the top-level domain name crowdstreet.com and app.crowdstreet.com or custom URL for the Sponsor Direct software as a service.

EXHIBIT 1
Page 20 of 26

 CROWDSTREET CONNECT

## APPENDIX B

## YOUR RESPONSIBILITIES

You, as a Sponsor, will be responsible for your activities on or using the Website, including the CrowdStreet Marketplace Solution. As such, you will be responsible for all offers and sales of Securities by you or Posting Issuers affiliated with you, including, without limitation, compliance with applicable state and federal securities laws, proper maintenance of all books and records applicable to you and your Posting Issuers, including stock, LLC interest, and other ownership records, and all aspects of the organization and operation of Posting Issuers.

You represent and warrant to, and agree with, CrowdStreet as of the date of this Agreement, and as of each Closing Date, as follows:

1.  You, as Sponsor, and each Posting Issuer organized by you or on your behalf, are or will be (a) in the case of each business organization, duly formed and organized, and validly existing under the laws of the state of incorporation or organization, in each case, with all requisite power and authority to conduct its business as conducted and proposed to be conducted, to perform its obligations under this Agreement and other agreements with CrowdStreet, and to issue any Securities being offered and sold, and (b) lawfully qualified to do business and in good standing in each jurisdiction in which you or such Posting Issuer conducts business and such qualification is required.

2.  This Agreement has been duly authorized, executed and delivered by you and constitutes, a legal, valid and binding obligation of yours, except as such obligation may be limited by bankruptcy, insolvency, reorganization and other similar laws affecting the rights of creditors generally and the application of general equitable principles.

3.  There is no consent, approval, authorization, order, registration or qualification with any court or governmental agency required for the execution and delivery and performance of this Agreement except for those which have been obtained and are in full force and effect;

4.  Neither you nor any Posting Issuer is or will be in breach or violation of, or default under, with or without notice or lapse of time or both, your or its corporate or LLC charter, bylaws or other governing documents.

5.  With respect to each Posting Issuer, as of each Closing Date:

    (a)  All of the issued and outstanding capital stock or other equity interests in such Posting Issuer has or will have been duly authorized and validly issued, fully paid, and nonassessable.

EXHIBIT 1
Page 21 of 26



(b)    Securities being offered and sold by each Posting Issuer will have been duly authorized and, when duly executed, authenticated, issued and delivered against payment therefor, will be validly issued, fully paid and nonassessable.

(c)    There is no consent, approval, authorization, order, registration or qualification with, or notice to, any governmental agency required for the offer, sale, and issuance of Securities except for those which have been obtained or given and are in full force and effect or will be obtained or given and be in full force and effect within legally required time frames.

(d)    The offer and sale of Securities by the Posting Issuer and the consummation of the other transactions contemplated in connection therewith will not conflict with or result in a breach of any of the terms or provisions of, or constitute a default under the organizational documents of a Posting Issue, and the issuance of Securities by such Posting Issuer and the consummation of the other transactions contemplated in connection therewith will not conflict with or result in a breach of any contract, agreement, indenture, note, trust deed, mortgage or other agreement or instrument to which the Sponsor or Posting Issuer is a party or by which it, or any of its properties is bound, or violate any applicable law, rule, regulation, judgment, order or decree of any government or governmental body, domestic or foreign.

6.    There are no pending actions, suits or proceedings against or affecting you, a Posting Issuer, or any properties of either, that could reasonably be expected to have a material effect on your performance of and activities under this Agreement, and, to the best of your knowledge, no such suits or proceedings are threatened or contemplated.

7.    You or your Posting Issuer will pay all taxes, fees and other governmental charges in connection with the offer and sale of Securities.

8.    Subject to compliance by CrowdStreet with the relevant provisions of Appendix C, each offer and sale of Securities pursuant to this Agreement will at all times be exempt from the registration and prospectus delivery requirements of the Securities Act and any applicable state securities or "blue sky" laws. In furtherance of the foregoing, you will notify CrowdStreet in writing, either as part of a Proposal or otherwise, whether or not you or a Posting Issuer intend to rely on an exemption from registration that permits general advertising and general solicitation, and:

(a)    In the event that you or a Posting Issuer elects to offer and sell Securities in reliance on an exemption from registration that prohibits general solicitation and general advertising, you, each Posting Issuer, and all of your respective Representatives, will refrain from all forms of general solicitation and general advertising, including, but not limited to,

EXHIBIT 1
Page 22 of 26



advertisements, articles, notices or other communications published in any newspaper, magazine or similar medium or broadcast over television or radio.

(b)  In the event that you or a Posting Issuer elect to offer and sell Securities in reliance on an exemption from registration that permits general solicitation and general advertising, you will be solely responsible for verifying, as and to the extent required by applicable law, that all investors in the offering qualify as accredited investors under applicable securities laws.

9.  All financial information provided by Sponsor or any Posting Issuer, including any audited or unaudited financial statements, is accurate and complete and fairly presents in all material respects, the financial position and results of operations of the subject person as of the dates and for the periods specified in such financial statements.  There has been no material adverse change or development with respect to you or any Posting Issuer, taken as a whole, since the date of the most recent financial information provided.

10.  Neither you nor any Posting Issuer, nor any of your or its respective officers, directors, managers, or holders of 5% or more of capital stock or other equity, is subject to or party to, or has received any notice or advice that any of them may become subject to, any investigation with respect to, any regulatory or other proceeding, consent decree, or other state or federal regulatory enforcement action, proceeding or order, that restricts the conduct of your or its business.

11.  The Sponsor Materials do not and will not contain any untrue statement of a material fact or fail to contain a material fact that is required to be stated therein or necessary to make the statements made therein, in light of the circumstances under which they were made, not misleading.

12.  Neither you nor any Posting Issuer, nor any of your or its respective officers, directors, managers, promoters, holders of 10% or more of the capital stock or other equity, or any person that has been or will be paid (directly or indirectly) remuneration for solicitation of purchasers of securities, are subject to:

(a)  Felony or misdemeanor convictions in connection with the purchase or sale of a security or involving the making of a false filing with the SEC within the last ten years;

(b)  Injunctions or court orders within the last five years against engaging in or continuing conduct or practices in connection with the purchase or sale of securities, or involving the making of any false filing with the SEC;

(c)  U.S. Postal Service false representation orders within the last five years;

(d)  A proceeding or order:

EXHIBIT 1
Page 23 of 26



<ol type="i">
<li>revoking or suspending registration as a broker, dealer, municipal securities dealer, or investment adviser;</li>
<li>placing limitations on activities as such;</li>
<li>barring association with any entity; or</li>
<li>barring participating in an offering of penny stock; or</li>
</ol>

(e) A suspension or expulsion from membership in, or suspension or barring from association with a member of, a registered national securities exchange or national securities association for conduct inconsistent with just and equitable principles of trade.

EXHIBIT 1
Page 24 of 26

 CROWDSTREET
CONNECT

## APPENDIX C

## CROWDSTREET RESPONSIBILITIES

CrowdStreet will be responsible for the operation of the CrowdStreet Marketplace Solution, including the Website, in a manner consistent with its representations to users of the Website generally, as well as users of the CrowdStreet Marketplace Solution, including Sponsors and Users.

CrowdStreet represents and warrants to and agrees as of the date of this Agreement and as of each Closing Date, as follows:

1. CrowdStreet is and will be duly organized and validly existing under the laws of the state of Delaware, with all requisite power and authority to conduct its business as conducted and proposed to be conducted and perform its obligations under this Agreement, and is lawfully qualified to do business and in good standing in each jurisdiction in which it conducts business and such qualification is required.

2. This Agreement has been duly authorized, executed and delivered by CrowdStreet and constitutes, a legal, valid and binding obligation of CrowdStreet, except as such obligation may be limited by bankruptcy, insolvency, reorganization and other similar laws affecting the rights of creditors generally and the application of general equitable principles (regardless of whether the issue of enforceability is considered in a proceeding in equity or at law).

3. There is no consent, approval, authorization, order, registration or qualification with any governmental agency required for the execution, delivery and performance of this Agreement.

4. CrowdStreet will perform the additional duties expressly agreed to in each Proposal.

EXHIBIT 1
Page 25 of 26

 CROWDSTREET CONNECT

APPENDIX D

**COVENANTS AND CONDITIONS FOR EACH CLOSING**

1.    The Posting Issuer shall have obtained all governmental authorizations required, if any, in connection with the offer, sale and issuance of Securities and the performance of its obligations hereunder.

2.    Prior to the Closing Date, the Posting Issuer shall have furnished to CrowdStreet such further information, certificates and documents as it may reasonably request.

If any of the covenants and conditions specified in this Appendix D shall not have been fulfilled in all material respects when and as provided, or if any of the certificates referred to in or contemplated above shall not be reasonably satisfactory in form and substance to the recipient thereof, a party may cancel this Agreement at, or at any time prior to, a Closing Date. Notice of such cancellation shall be given in writing or by telephone or email confirmed in writing.

EXHIBIT 1
Page 26 of 26